The next case will be the 08-1603-O-Methyl-Mcneil-Pharmaceuticals v. Mylan Labs. Mr. Walsh? Thank you, and good morning to all of you. This appeal relates to over $1 million in undocumented translation costs for the assessment of this matter. There were two very insufficient... How are they undocumented? There are two declarations that were judged. There's one declaration, which is the conclusive Celeste Declaration, which just says... So the trial examiners, they actually counted the number of pages, right? That were translated. They counted the number of pages that were translated. But the key issue phenomena are whether the pages that were translated were reasonably necessary. So is that the only issue with respect to the trial exhibits? No, the other issue, Your Honor, is that the trial exhibits were translated for two separate parallel cases. The Mylan case in West Virginia and the Teva case in New Jersey. Okay, so those are the two issues with respect to the trial exhibits. That is correct, Your Honor. With respect to the... But if I could add, Your Honor, there's no production of the underlying invoices or proof of payment. There are conclusions that we think these new pages were translated, but there's no submission as to why all these things were translated that were not used in the trial. As to the privilege, the documents that were claimed to be privileged were viewed by the court in Canada. There was no count of the pages that were translated. As I understand it, they made a guesstimate based on how many reams of paper will fit into a banker's box, and then they made a guesstimate as to what percentage of the privileged documents, the selected privileged documents were in Japanese and what were given. Which might be a problem, but I looked at your submission, and although I had seen you complain about that... Well, we complained about the whole methodology, Your Honor. No, I'm talking specifically about the methodology applied in the privileged documents. I don't see any complaint in there that there was something wrong with their estimate, using the eight boxes and 1,000 pages per box of the transcripts. I don't see any objection. Well, we objected to the overall procedure, and the main objection of the privileged documents were there were a large number of these allegedly privileged documents which were ultimately held by the magistrate judge to not be privileged. And we maintain that we should not be compelled to pay for the translation costs for things which were determined to be improperly withheld as privileged. And again, the overarching point is all of this was apparently done for both the Tama case and the Mayan case, and it would be convenient to say that stick Mayan with the cost for the whole thing. The use of the documents in two cases was my fault, and I agree. They're not in my court of order, Your Honor. Well, the court approved the joint discovery of the parallel cases, and the point being that they were pursuing two parallel cases. There's no statement in any of their declarations that they didn't need to translate exactly. They didn't need the key, but they used the discovery from this case and the other case, right? That's right. And so why does that mean that the cost here had to be reduced in share? Well, it was not just using the evidence in the other case, Your Honor. The actual depositions were conducted on a combined basis. Okay, so why does that compel the court to allocate the cost? Well, in terms of what's reasonable and fair, Your Honor. Well, wait a minute, counsel. I thought, forgive me if I'm wrong, but I thought the only depositions at issue with regard to cost were the ones noticed by Mylon. Is that right? So they're the only one. I mean, the district court judge didn't just give everything that was used or everything that was asked for. With regard to the depositions, in particular, the Teva litigation versus this litigation, the only deposition costs that were awarded were ones specifically noticed by Mylon, which would have been unique to this case or at least necessary for this case. Certainly, I think your point would be more compelling if, for example, you wanted to pick out a few documents or had to pick out a few and showed us this was unique to Teva. It had no bearing on our case. It was a deposition of a Teva corporate officer regarding their intent when they did something. You can follow me. I understand the point you're making, Your Honor, but it's just not applicable here. The Japanese depositions, not the translations of the exhibits, the Japanese depositions were taken on a joint basis with Teva Counsel and Mylon Counsel sitting side-by-side in Osaka. So these were depositions taken with both captions on the transcript by both Arroyo defendants. As far as the documents are concerned, the translation of the documents, which is the bulk of the cost, these documents were translated. They were put on the exhibit list. Only 70 out of 350 of the translations were actually used at the trial. There is no declaration saying it was reasonably necessary to have that other 280 translations, the bulk of the translation cost, for the Mylon trial. Counsel, why didn't you pull out some of those documents then and show us how unnecessary they were? Why didn't you? I'm not saying go through all 350 of them, but why not pull out 10 so that you can show the district court and us, look, these 10 documents on the exhibit list bore no relation to the issues that ultimately led to the trial. Because for you to just make a sort of in the air statement, well, they only used this many, oh, this many, it's not that compelling in our standard of reviews of use of discretion for this. So you've got a real steep hill. Your Honor, they only used 70 out of the 350 translations. They give no explanation that the other 280 were reasonably necessary for the preparation of the trial. They just put them on the exhibit list. The district court, we submit, used the wrong standard. The district court said it was Mylon's burden to prove that all those 280 documents were irrelevant and inadmissible, a totally impossible burden for us because admissibility is going to be judged in the context in which something is offered. This is not a situation, with all respect, Your Honor. Where did the court say that you have to prove they're irrelevant and admissible? I believe it's on appendix A27, 28. Also attached to our opening brief. Appendix 26 and 27. I believe it's on appendix A27. Where did the court say that you have to prove they're irrelevant and admissible? Appendix 26 and 27. This is related to the privilege law, counsel. This irrelevant and inadmissible is, we're discussing the privilege law. That's different from the trial exhibits, which you and I are talking about. Totally separate arguments, aren't they? It's my understanding that's the argument she applied to all of them. I don't see how you get there. And how can we prove something that is inadmissible when we don't know in what context it might be offered? Well, I don't agree with her in saying that you have to prove that with respect to the trial. Nor do I. So it strikes me that Judge Moore is asking why not go through there and at least come up with some examples of exhibits that they didn't need. Why shouldn't you at least do that? Well, Your Honor, with all respect, they determined that they didn't need them. Now, I could hypothesize- Well, counsel, that's because they're defendants, right? They don't know exactly what you're going to put on in a case in chief until you do. Yet they have to designate their trial exhibits in advance. Isn't that usually the way the process works? Well, they were the plaintiff, but we had the burden of proof. Right. You went first. Your Honor, I understand they say we went first. We did go first. They knew what the issues were. Now, I can hypothesize a situation. If we had five issues at pre-trial stage and we went to trial and only one out of five, then they could say, well, we designated all these exhibits because you said you were going to have all these defenses which you ultimately did not pursue. You dropped them. We didn't do that. That's not this case. This case was not a case of dropped issues. I know that happens in lots of cases. So their exhibit list was prepared for precisely the case we announced we were going to put on and precisely the case we, in fact, put on. Great. So why don't you go through and find some of the exhibits that weren't reasonably necessary? Well, they were largely duplicated. Many of them, we don't have a clue why they translated them. You could give us some examples. You could have given the district court some examples of things that didn't seem to have any relationship to the case at all or weren't reasonably necessary. And maybe then the district court would have said, well, let's put some burden back on them to show that with some more detailed showings, the rest of the exhibits were reasonably necessary. Well, Your Honor, of course we could have done all sorts of things, but that's really shifting the burden away from the party claiming the cost. And to justify over a million dollars in translation costs based on declarations which do not address at all why the majority of the exhibits were put on the list and not used. Do you want to say anything about it? Yes, thank you. Good morning, may I please report? Daiichi respectfully requests that the district court's judgment be affirmed in all respects. This is a situation- I don't think we were in doubt about that. Yes, I don't think we were in doubt. Okay. What about the estimate with respect to the privileged documents? That seems to be a different thing. They may not properly raise that issue, but they do not. They didn't have access to the majority of the documents. They only had access to the ones that were produced. So they couldn't do much to refute your showing with respect to that. Why, at least with respect to the privileged documents, wasn't there a count of translated pages or at least a sampling of the translated pages, which you didn't seem to do? Certainly unlike the trial exhibits where there was, because in that situation, Your Honor, the base numbers were given from the exhibit list. It was a manageable task. But here- What's unmanageable? I guess taking a box of documents and asking a paralegal to count the number of translated documents in the box. Yeah. In this case, sir, we didn't do it. We didn't do it. The question is, it would have been easy to do it, right? We relied on an estimate, and easy is a relative word. It would have taken a very significant amount of time to go through eight boxes of 20-some thousand pages. We would have spent two hours of paralegal time to do a sample. And our decision in summa suggests that maybe you should do that. Yeah. And in summa, Your Honor, the court said, page by page, precision is not required. What's required is to present a calculation that's reasonably accurate under the circumstances. And in this case, Your Honor, we respectfully submit that the 8,000 estimate was reasonable under the circumstances. The court looked at every one of those documents. The court had them. The court was familiar with the record. And in any cost analysis where the sufficiency of the- The suggestion is that the court should have counted the documents instead of you. No, Your Honor. I'm saying- It's not very reasonable. I'm not saying- I'm saying that the court went through them over four weeks, day by day, and was familiar with them. And that's part of the- Right. They were in the courthouse. I'm not saying the court had you accounted, but nobody disputed it below. We put in an estimate. It was accepted. And, yes, it was an estimate. And, yes, we didn't count, Your Honor. And, yes, we could have. We respectfully submit we did meet the summit standard because it was a reasonable estimate given the circumstances of the case. The court was uniquely positioned to assess the sufficiency of the proofs, and it did so here. Counsel, what? 30%? 30% of the documents were wrongly logged on the privilege log? I mean, look, I know this is not a precise number, and 10%, 15%, I would have expected this somewhat normal. But 30%? I mean, your privilege log had 1,461 documents, and 477 of them were determined to have been required to be produced. Some with redactions, Your Honor. Some had been determined to be letters from a lawyer but didn't contain substantive advice, but more in the nature of transmittal letters or the like. But in most cases, what we required to do by the court was submit evidence and declarations from attorneys in all the foreign countries. This log was created because the patent was filed worldwide. I'm assuming you had lots of foreign prosecution, and you just unfortunately designated all of them confidential, which, of course, they're not all entitled to be privileged. You designated them all privileged. Is that what happened? No, Your Honor. As a matter of fact, there was a couple of versions of the log. An initial log was perhaps somewhat over-inclusive. Myelin raised some concerns. We went back through.  Wait. When you say the original log was somewhat over-inclusive, you mean something more than 1461. You're not talking about the 1461 number. It was broader than that, Your Honor. It was broader than that, and you're saying that was somewhat over-inclusive. Thirty percent, I'm saying, is way off the mark for what's reasonable, so somewhat over-inclusive would be a pretty big understatement, counsel. Well, certainly Myelin makes its arguments in that regard, and we could look at it from the standpoint that two-thirds were upheld, and given the size of the case, we felt the motion was overbroad. They challenged every single document on the log, and because of that, the court needed those translations in order to go through over the course of four weeks. So we felt Myelin's motion was overbroad. There was letters on that log that were clearly from a U.S. law firm to our client. Which we don't think could have even rationally been challenged, but yet every single document was challenged. But in terms of the costs that were awarded here, putting aside the numbers, the court needed the translations, and so our position is that we were required to put them in, therefore they were necessarily obtained for use in the case.  While Myelin argues that we made no showing of necessity or relevance, but again, we were required to submit those by the district court. And this is a case where Myelin raised practically every defense in the book. There was prior invention, indefiniteness, a huge case of obviousness involving many real-world factors, inherent anticipation, multiple theories of inequitable conduct. Contrary to what Myelin has just argued, some of those defenses, the first two I mentioned, they fell out after the defendant's opening case. We didn't have to put on the bubble. We got it. I don't understand what this has to do with whether you should get the cost of translating the documents as to which privilege was not properly claimed. Okay. And back to that point, Your Honor, because whether the privilege turned out to have been proper or was overruled by the court, the court needed the translations for all of them. The court needed the translations to do its incarnate duty. But they needed them because you inappropriately put them on the privilege law. They needed them because of a fault of yours, because otherwise they would have just been disclosed in discovery and they could have made the decision of whether to translate them or not themselves. And with respect, Your Honor, we respectfully disagree that these were improperly claimed. They were found by the court over our objections to have been put on the law. But the court can say wrong. But we had good-faith grounds to do that. In practically every situation, we made our arguments. The court heard it. You know, the court considered it. The court looked at everything. We felt that the court applied too liberal of a standard, actually, and that the numbers should have been much smaller. But the question with regard to translation has nothing to do whether you were in good faith or bad faith or this or that. You were wrong. You put these things just as though, suppose in your exhibit list for trial, you had a bunch of exhibits that had nothing to do with this case that you were asking for translation. The fact that you did it in good faith wouldn't entitle you to recover the translation costs for those documents. Well, if they're not necessary for the case, then we shouldn't be entitled to recover them because that's the standard. Our position going into the district court when we submitted the bill was that we were required to do so. The court needed them. And the district court assessed all of the proof that we submitted and found that they were necessary. So why is it that in the other case that you cited, and you agreed that each party would bear its own costs, why is it that you believe it's appropriate to then charge an ally with those same costs? I assure you, Your Honor, this was not a situation where the Milan case was formally consolidated with TEVA and they ran as one case so that all the costs were essentially incurred in both cases. There was certain limited discovery that was agreed to by the parties, namely depositions of Daiichi's witnesses in Japan that occurred jointly with the permission of the court. And as we've noted, so what we're talking about is a tiny fraction of the overall costs awarded might be termed shared costs at all. For example, but the translation costs, Your Honor, for example, what we did for the trial exhibits was not used in TEVA. TEVA never went to trial. In the TEVA case, they agreed to be bound by the judgment in the Milan case, except for one narrow issue of inequitable conduct that was decided on a sum of judgment. But there were joint depositions, right? Yes, sir. They were covering the costs with respect to that. Well, not sharing, right? We did recover the costs and the court did not order us to share them with TEVA. Correct. And I would simply note in response that those were depositions. I don't think the argument is that the portion of it should be shared with TEVA. The argument is that your recovery should be reduced to account for the fact that they were... the costs should have been allocated between the two cases. But those depositions, Your Honor, they were noticed by Milan. They were taken by Milan's attorney and TEVA's attorney. They split the questioning, but the overall length was the same and they would have cost the same had Milan asked all the questions. So Milan achieved some benefit, too. And even though they were joint, the court... those depositions were used in the Milan case. In situations like this, forget about this case, where depositions are taken to be used in two cases, is there a general agreement that some of the costs should be allocated to one case and some of the costs to the other case? What's the practice? The practice is, Your Honor, that it just shakes out at the end of the day. Whichever case is resolved... We didn't have one here, Your Honor, and I've never been a part of it. And in this case... Right, but, Inspector, we don't review it... view it as a transfer. In the TEVA case, we settled that we gave up... in exchange for our not seeking costs. But, Your Honor, we never did recover twice, and we would not have done so. If we recovered... ...depositions at the case... It would not have been fair for us to seek to recover... ...depositions. But you would have had an argument to recover half of it. Not if we had already recovered the full amount in Milan, but... If the TEVA costs issue had come up first, you could have argued that TEVA should have paid at least half the costs of these depositions, right? Yes, Your Honor. That's true. But, for example, we did not charge Milan for copies of documents we produced to TEVA. So we encouraged separate costs in the TEVA case that had nothing to do with Milan that aren't at issue here. We're talking about a tiny fraction of the costs that the court allocated against Milan in this case. How tiny is it? Pardon? How tiny is it? Well, if you go through the court's allocation at the end, I can't give you a dollar amount, but certainly the translations that are issued here aren't relevant. The privilege dispute didn't occur in TEVA. There was no issue in the case. The privilege dispute was an issue in the Milan case, Your Honor. TEVA never challenged the law. There was no in-camera review in TEVA. The allocation from the TEVA case to this case is an issue in this case, Your Honor. Are you saying that it's minimal? Or do you need to look at it? Well, I'm saying two things, Your Honor. First of all, it's nowhere near 50% if there is an amount at all. Second, I can't say that it's... Counsel, we wouldn't be the ones to decide that, right? We're vacating the demand if this is the route we want to go for the district court, because this is going to be a labor-intensive fact-finding exercise, it seems to me, because someone's going to have to ascertain how the apportionment should be struck. On this record, Your Honor, you're absolutely correct. This court can't figure that out based on the record. And it's not in the millions, right? It would be more than $1,000, but less than 50, Your Honor. So I can't call that in the millions. I can say that it's nowhere near 50% because the translation costs... Less than 50,000 or 50%? Oh, 50,000. It might include some of the costs of the work for deposition transcripts on page 31 of Judge Keeley's order, and a small amount of fees for witnesses, because certain witnesses traveled from Tokyo to Osaka for those depositions, and perhaps some of the interpretation costs, but I would have to check. One point I'd like to make on another issue is Milam's reliance on the Farmer case and his sparingly exercised language. That language was disapproved by the Supreme Court in the Crawford case 25 years later, and so we don't think that that should be given much weight at all. So that's it. 442 U.S., 482-83. I see that I'm out of time. Thank you very much. Let me state first off and follow up on Judge Moore's question about whether the burden of proof shifted just on the privilege law issue or the exhibit list. Judge Keeley, on page 26 of her opinion, which is the appendix to our opening brief and also the jury appendix, says Milam has not established why specific exhibits included by Da'ichi's exhibit list were irrelevant, etc., etc., and inadmissible at trial.  that the burden of proof was on Milam. As far as the Tava case is concerned, I think counsel made it quite clear he's correct. For most issues, Tava agreed to abide by the outcome of the Milam trial. So the Milam trial was, in effect, on almost all issues, a Milam trial and a Tava trial. Therefore, it's not just those 30 days of Japanese depositions. It's the entire trial. When did the settlement occur? The settlement occurred after the Milam trial. The Tava settlement. Was it a joint trial that was going forward with both Milam and Tava? No, it was not. Then I'm confused on how you say it's a Tava-Milam trial. Let me see if I can make it clear. It was the Milam trial in West Virginia. Tava had agreed in New Jersey that on all but a couple of inequitable conduct issues, Tava would abide by the outcome of the Milam trial. That's why I say, in effect, it was a Milam and a Tava trial. Yet they're trying to stick Milam with a million dollars worth of translations for all these exhibits. What is the practice when there's a shared discovery in two cases? Do the parties normally have an agreement with respect to how the costs are going to be allocated between the two cases? How is this handled? Probably in an infinite variety of ways. Obviously, if we'd known that Daiichi was going to try to stick us with the whole thing, we would have had an explicit agreement. Certainly, if we had another case with him, we would certainly try to do that. The council is correct that in the Tava settlement, each party agreed to bear its own cost, but it's not as though Daiichi walked out of there empty-handed because Tava, in effect, agreed to a judgment-weighting appeal and, in effect, agreed to stay off of the lucrative market. So Daiichi did not go empty-handed out of that, but then they sought to get the entire cost out of Milo. With respect to the privilege documents, council said the court went through all of these for a month. It was the magistrate judge. It was not Judge Keeley. Judge Keeley, as far as the record is concerned, never saw those documents and knew nothing about them other than the cost petition. So, in short, your Honor... You all... I mean, the one thing that bothers me is, obviously, this is an issue... The district court judge has a really good feel for this kind of thing because the district court judge is the one dealing with both of you on a regular basis. So you're asking for too much because you're asking for a motion to compel on everything on their privilege law and there's some things that clearly shouldn't have been. And they did bad because they had a bunch of stuff on there that shouldn't have been. Isn't the district court judge ideally situated to be the one who decides just how much to apportion because she's the one dealing with you guys on a regular basis and that's why we have this abusive discretion standard. So how do I conclude she abused her discretion in light of all that? Well, as far as the privilege controversy is concerned, she delegated all that to the magistrate judge. She had nothing to do with the review of the documents, with the decision, and so forth. And as you pointed out, there were whole categories of documents for which lawyers weren't involved, it was patent agents in countries where they're not even trying to... But there was a whole category of documents for which clearly they were privileged and yet you guys locked them in on your motion to compel anyway. Well, of course, our motion to compel is based on a log without looking at the documents. But it says who it's to, who it's from. That's true. I'm sure you could have looked at that and ascertained that there were some number short of the entire privilege log for which you knew you weren't entitled. No. Every one we asked for we thought in good faith we were entitled to. You asked for everything on there. You really thought they had nothing privileged? Their privilege log was so sketchy we had no way of knowing in disinvolved countries for which privilege clearly did not apply. I see my red lights in violation. Thank you very much. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.